**GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,**

v.

**CAMBRIA SAVINGS AND LOAN ASSOCIATION, Defendant,**

and

**Foremost Insurance Company, Intervenor-Defendant.**

Civ. A. No. 76–1363.

United States District Court,
W. D. Pennsylvania.

April 11, 1978.

Stephen J. Laidhold, Pittsburgh, Pa., for plaintiff.

Robert F. Hawk, Butler, Pa., for defendant.

James B. Cole, Pittsburgh, Pa., for intervenor-defendant.

## OPINION

WEBER, Chief Judge.

Having already granted summary judgment in favor of Plaintiff General Electric Credit Corporation (GECC) on its complaint, this court must now consider a motion for summary judgment on the counterclaim filed by Defendant Cambria Savings and Loan Association (Cambria). The parties are in agreement on all the material facts; hence, summary judgment is also appropriate on this portion of the case.

On or about January 21, 1972, GECC and Robert Nalitz, doing business as Nalitz Auto & Mobile Home Sales, entered into both a Security Agreement and a Mobile Homes Time Sales Application and Agreement. The Security Agreement which granted GECC a security interest in all inventory and proceeds from Nalitz's sales of mobile homes, was perfected by filings of the appropriate finance statements and continuation statements. The Mobile Homes Time Sales Application, which governed GECC's purchase of retail installment accounts owned by Nalitz provided as follows in ¶ 11:

> "You are authorized and directed to establish a time sale security reserve or such other reserve or reserves as you deem necessary for the performance of our obligations under this agreement. The amount or amounts of such reserves shall be determined by you from time to time at your absolute discretion. It is agreed that such reserves are to be held as security for and not in lieu of performance by us. You shall have the right, however, immediately upon our failure to perform any obligation of this agreement, to apply said reserves, or so much thereof as may be necessary, in performance of such obligation or to satisfy any loss sustained by you by reason of our failure to so perform. When all Accounts purchased from us have been liquidated and all of our obligations to you under this or any other agreement existing between us have been performed, you will return to us any amount remaining in said reserves."

As of the filing of GECC's brief on this motion (December 20, 1977), approximately 430 retail installment accounts purchased by GECC from Nalitz were still outstanding; the total outstanding retail contingent liability was $2,429,081 and about $80,000 remained in the reserve account held by GECC under ¶ 11.

Late in 1975 the defendant, Cambria, began financing Nalitz's inventory, but it gave no notice to GECC of this fact. See our Opinion dated April 7, 1977, wherein we held that Cambria was therefore liable to GECC for the value of several trailers which it had removed from Nalitz's lot, a total of $28,200. Cambria now counterclaims, basically, that GECC must first satisfy its claim for this sum out of the reserve funds, which are adequate to cover it.

Cambria bases this claim on Nalitz's assignment to it on August 16, 1976, of all his interest in the reserve fund and on the equitable doctrine of marshalling of assets.[1] Because Cambria now raises again several points rejected implicitly in our opinion and orders on the previous motion, as well as points which we consider waived by Cambria's failure to raise them at that time, we will discuss only the following new and timely raised issues: (1) the nature of the interest in the reserve account assigned by Nalitz to Cambria and (2) whether the doctrine of marshalling of assets applies in this situation and requires the result urged upon us by Cambria.

To answer the first question, we must consider the nature and extent of GECC's interest in the reserve account. First, we cannot agree with Cambria that ¶ 11 of the Time Sales Agreement does not purport to give GECC a security interest in the reserve account. Whether GECC's purported security interest in the fund was adequately protected by filing is irrelevant because this fund was at all times in GECC's possession, 12A P.S. § 9–203(1)(b). By the terms of the Time Sales Agreement, Nalitz had no right to any portion of the fund until all of the purchased accounts had been liquidated. Clearly, if the assignment had not been made, Nalitz would now have only a contingent interest in the fund and might ultimately receive none of the money. We fail to see how Nalitz's assignment to Cambria of this contingent claim could alter GECC's rights or obligations with respect to the reserve account, Restatement of Contracts, 2d, § 168(1).

Finally, we hold that the doctrine of marshalling of assets[2] is inapplicable where, as here, there is no way to determine that the funds remaining in the account after its reduction in the amount of the counterclaim would be sufficient to cover other possible losses which might be sustained by GECC from its purchase of the Nalitz accounts, *American National Insurance v. Vine Wood Realty Co., et al.*, 199 A.2d 449, 454, 414 Pa. 263, 269 [1964]. An appropriate order will be entered granting summary judgment on the counterclaim to plaintiff.

---

1. Cambria has been reimbursed by its insurer, Foremost Insurance Company, for the sum now in dispute, and has assigned its claim to Foremost. Foremost has been granted leave to intervene, and for the purposes of this motion their interests are identical.

2. "When one creditor has a claim against two funds as security and another creditor has a claim against only one of these funds, the claim of the former must be first satisfied out of that fund which is security for his loan only." *American National Insurance*, 414 Pa. 263, 269, 199 A.2d 449, 454.